UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA

FILED
2019 OCT 15 P 3:21
SUSAN Y. SOONG
CLERK, US DISTRICT COURT
NO. DIST. OF CA.

| CRAIG CUNNINGHAM,<br>Plaintiff,<br><br>v.<br><br>Plivo, Inc, Joseph Cucurillo, Marlena Cucurillo, Steven Pratt<br><br>Defendant | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |
|---|---|---|

CV 19 6605

**Plaintiff's Original Complaint**

**Parties**

1. The Plaintiff is Craig Cunningham and natural person and was present in Texas for all calls in this case in Collin County.

2. Plivo, Inc., is a California corporation that can be served via registered agent VCorp Services, CA Inc., 818 West Seventh Street, suite 930, Los Angeles, CA 90017

3. Joseph Cucurillo is a natural person 8073 Hillandale Dr., San Diego, CA 92120

4. Marlena Cucurillo is a natural person who can be served at 7412 Carlina St., Carlsbad, CA 92009

5. Steven Pratt is a natural person 1331 Casandra Loop, Port Orchard, WA 98366

6. John/Jane Does 1-4 are other liable parties currently unknown to the Plaintiff.

**JURISDICTION AND VENUE**

7. <u>Jurisdiction</u>. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal

statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim: arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case; and doesn't seek money damages, so it is unlikely to predominate over the TCPA claims.

8. **Personal Jurisdiction.** This Court has general personal jurisdiction over the defendants live, transact business, and reside in this district.

9. **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the text messages in question were sent from this district.

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227**

10. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding telemarketing.

11. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

12. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency

purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

13. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

14. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

15. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

16. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

17. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

18. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

19. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

20. The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

21. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

22. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the

conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

**The Texas Business and Commerce Code 305.053**

23. The Texas Business and Commerce code has an analogus portion that is related to the TCPA and was violated in this case.

24. The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

**FACTUAL ALLEGATIONS**

1. In 2016, the Plaintiff recieved multiple unsolicited and unwanted text messages prompting the Plaintiff to go to odd websites for a beauty kit. Unsolicited text messages have been deemed phone calls under the TCPA. These were touted as "free samples" where the Plaintiff would only pay the shipping and handling fees. This is typical of "negative option marketing" where a consumer must opt out of future charges or they will be charged for a program. These programs have frequently drawn scrutiny from the FTC and multiple class action lawsuits for deceptive marketing practices.

2. All of the text messages were placed to the Plaintiff's cell phones 615-331-7262. All of the text messages redirected the Plaintiff to a website antiagingrewards.com. At antiagingrewards.com, there were a total of 4

products being offered for sale, which were **Chamomile calm** sold by Praza, LLC, **Nu Beauty**, **Ageless Illusion**, which was sold by TRS Limited, and **Metabo Matrix**. The Plaintiff is in the process of identifying the companies that manufacture each of these products and should be able to identify them through the discovery process.

3. The website antiagingrewards.com is owned by Joseph Cucurillo, Marlena Cucurillo and Steven Pratt.

4. The process works as follows: The Plaintiff would be sent an illegal text message to his cell phone by an entity owned/controlled by Joseph Cucurillo, Marlena Cucurillo, and Steven Pratt through Plivo. The text message would list a website owned and controlled by Steven Pratt that redirects to antiagingrewards.com, which is also owned and controlled by Joseph Cucurillo, Marlena Cucurillo, and Steven Pratt.

5. On the antiagingrewards website, there would be 4 products sold for which Joseph Cucurillo, Marlena Cucurillo, and Steven Pratt generate a comission for themselves, and the companies selling the products hope to trick unwitting consumers into buying and rebilling at inflated prices later.

6. Joseph Cucurillo, Marlena Cucurillo, and Steven Prattor entites he controls signed contractual agreements with each of these 4 companies selling these beauty products to generate leads and sell their products through his efforts for which he would be rewarded with comissions for each sale.

**Details on the text messages sent to the Plaintiff**

7. On August 24th, 2016, the Plaintiff recieved a text from 832-637-3574. The text message said *"Greg, just come to http://fj49j.pw and claim your no-risk products from Kim and Kourtney K!"* which is apparently a direct and false reference to Kim and Kourtney Kardashian that actually don't endorse or refer to these products.

8. Another text message on 8/23/2016 from 828-295-2610 stated *"Greg, you may get your 3 no-risk products. Click on http://9f4dem.us"*

9. Another text came in on 8/22/2016 from 336-536-0211 with a nearly identical message to the one in paragraph 11 of the complaint but directed the Plaintiff to go to http://fj49j.site instead.

10. Another text came in on August 20th 2016 from 501-239-5640 with an message of *"Greg, simply click http://jg-48f.xyz and redeem up to 6 risk free products from Kim and Kourtney K."*

11. On August 19th 2016, the Plaintiff recieved a message from 337-313-2642 which stated *"Greg, just click http://dlk49.pw to redeem up to 5 risk-free products by kim and Kourtney!"*

12. On August 14th, 2016 the Plaintiff recieved a text mesage from 501-242-0163 nearly identical to the message in paragraph 11 which stated instead that the Plaintiff should visit *"http://f94-fk.us"*

13. On August 13, 2016, the Plaintiff recieved a text from 915-267-1150 stating *"Greg, come and claim up to 5 no-risk products. Visit http://dkfg4-k.us"*

14. On August 12, 2016, the Plaintiff recieved a text from 772-242-4719 which stated *"Greg, come and claim up to 3 no-risk beauty kits. Come to http://dlk49.pw to get full details."*

15. On August 11, 2016, the Plaintiff recieved a text from 281-783-6141 which stated *"Greg, just click to http://f49-fk.us and claim up to 6 no-risk products from Kim K and Kourtney!"*

16. On August 10, 2016, the Plaintiff recieved a text from 920-605-9223 whcih stated *"Greg, please click http://sm-2w.site and redeem your no-risk beauty kits by Kim and Khloe!"*

17. On August 9th, 2016 the Plaintiff recieved a text from 803-393-3417 that stated *"Greg, you can claim your 6 no risk beauty boxes. Visit http://jg-48f-pw to find info."*

18. On August 8th, 2016 the Plaintiff received a text from 720-500-6870 that stated *"Greg, just click to http://f94-fk.us and claim up to 3 risk-free beauty kits from Kim K and Khloe!"*

19. On August 4th, 2016 the Plaintiff recieved a text from 724-821-5175 that stated *"Greg, just click http://argue.host and claim your risk-free beauty kits by Kim K and Kourtney"* and another text from 503-436-6638 that stated *"Greg you can claim up to 2 risk-free products. Visit http://k94-d.bid to see info"*

20. On August 3rd, 2016 the Plaintiff recieved a text message from 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 that stated *"Greg, come and claim your 4 no-risk beauty kits. Come to http://among.tech to get details"*

21. On April 29, 2016 the Plaintiff recieved a text message from 740-207-2502 that stated *"PRE-RELEASE! You can try Kim and Kourtney's new skincare line risk-free today! Visit the pre-release portal at http://cpo1.net to get started!"*

22. On April 5th and 19th 2016 the Plaintiff recieved text messages from a short code of 24413 which the Plaintiff is in the process of researching, but the text messages stated *"You were selected as a skincare product tester. To get started today please visit http://goo.gl/PQbk4p to claim your products and reserve your spot."* and "*You were selected to try our new derma cream line free in your home. Visit http://goo.gl/or2xty to get started."*

23. In total, the Plaintiff recieved 19 text messages that were unsolicited and unwanted to his cell phone.

24. As these above named parties stand to profit and benefit from the Plaintiff's enrollment in these programs, they are directly liable for the calls as a seller, as defined by the TCPA. Joseph Cucurillo, Marlena Cucurillo, and Steven Pratt are directly liable for the calls that were placed, and Plivo is directly liable for sending the messages to the Plainitff.

25. The individual corporate officers and managers of each of the corporate entities are liable for the calls placed on behalf or for their benefit. They are personally liable for the TCPA damages as they had direct, personal participation in causing the illegal telephone calls to be made as well as they directly authorized the illegal telemarketing calls to be made.

26. The individual corporate officers also failed to take efforts to implement appropriate policies or procedures designed to comply with the TCPA which makes them personally liable for the telephone calls made on their behalf and for their benefit.
27. These text messages violated the TCPA in two ways, first by placing multiple automated telephone calls to the Plaintiff's cell phone in violation of 47 USC 227(b), and second by not conforming to the requirements of 47 USC 227(c)(5) and the FCC's rulemaking authority under 47 CFR 64.1200(d), which requires the defendants to have a written policy for maintaining a do-not-call list, failure to train agents and personnel engaged in telemarketing on the use of the do-not-call list, and the failure to identify the party placing the call or the entity for which the call is being placed. Each of the Defendants are jointly liable to the Plaintiff in the amount of $3,000 per call made, $1500 for violating 47 USC 227(b) and $1500 for violating 47 USC 227(c)(5). Additionally, each product offered by each company represents a new cause of action entitling the Plaintiff to $3,000 per call per defendant.
28. The officers of the corporations have a direct role in the illegal conduct, authorizing it and ratifying the illegal telephone calls.
29. The officers of each and every listed corporation had direct, personal conduct in authorizing the telephone calls or oversaw and directed the telemarketing efforts for which their corporations benefitted. The officers

set company policy and directed the marketing efforts of the respective companies.

**TCPA Violations by Plivo, Inc. (Hereafter Plivo)**

30. Plivo sent the Plaintiff at least 17 of the 19 illegal text messages that were unrelated to any emergency purpose and were not with the Plaintiff's consent. The offending text messages were sent from a variety of phone numbers that the plaintiff has identified as being associated with Plivo. The text messages by Message Media violated 47 USC 227(b) and 47 CFR 64.1200(d) by sending unsolicited text messages to the Plaintiff's cell phone and for failure to identify themselves as the sender of the messages. Plivo knew they had not obtained prior express written consent from the Plaintiff and still allowed for the offending calls to be placed.

**Plivo and Joseph Cucurillo, Marlena Cucurillo, and Steven Pratt's Control over the illegal text messages**

25. At all times relevant to the claims alleged herein, Joseph Cucurillo, Marlena Cucurillo, Steven Pratt were the corporate officers and executive in charges of multiple corporate entities that sent the text messages Each and every call was placed on behalf of the corporate entites owned by Joseph Cucurillo, Marlena Cucurillo, and Steven Pratt and Plivo

26. Joseph Cucurillo, Marlena Cucurillo, Plivo and Steven Pratt were aware that they, were sending automated, telemarketing calls en masse to people, including Plaintiff, and had recieved previous complaints about these types of calls

27. As executives, Joseph Cucurillo, Marlena Cucurillo, and Steven Pratt. had the power

to stop these spam campaigns. Plivo also had the ability to monitor and stop these spam campaigns.

28. Instead, Plivo allowed the calls to continue and the responsible managers to keep their jobs—despite his knowledge of frequent do-not-call complaints from recipients of these messages, including the Plaintiff.

**The Plaintiff's cell phone is a residential number**

29. The text messages were to the Plaintiff's cellular phonne 615-331-7262, which is the Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

**Violations of the Texas Business and Commerce Code 305.053**

30. The actions of the defendants violated the Texas Business and Commerce Code 305.053 by placing automated calls to a cell phone which violate 47 USC 227(b). The calls by Teliamarie Lamb and her corporation violated Texas law by placing calls with a pre-recorded message to a cell phone which violate 47 USC 227(c)(5) and 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e).

31. The calls by Teliamarie Lamb violated Texas law by spoofing the caller ID's per 47 USC 227(e) which in turn violates the Texas statute.

## I. FIRST CLAIM FOR RELIEF

**(Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))**

**(Against All Defendants)**

1. Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls to Mr. Cunningham's cellular telephone number without his prior express written consent.

3. Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

4. Mr. Cunningham is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

5. Mr. Cunningham also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

## II. SECOND CLAIM FOR RELIEF

**(Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))**

**(Against All Defendants)**

6. Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

7. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

a. a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1); [2]

b. training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);[3] and,

c. in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

8. Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

9. Mr. Cunningham is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

10. Mr. Cunningham also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and AFS's name in the solicitations.

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

## III. THIRD CLAIM FOR RELIEF: Violations of The Texas Business and Commerce Code 305.053

11. Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

12. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Mr. Cunningham's cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq. The Defendants violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

13. Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation.**Texas Business and Commerce Code 305.053(b)**

14. Mr. Cunningham is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053**(c).

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Craig Cunningham prays for judgment against Defendants jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOEs as they are identified and to conform to the evidence presented at trial;

B.   A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C.   An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.   An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation and individual for 30 calls.

E.   An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F.   An award to Mr. Cunningham of damages, as allowed by law under the TCPA;

G.   An award to Mr. Cunningham of interest, costs and attorneys' fees, as allowed by law and equity

H.   Such further relief as the Court deems necessary, just, and proper.

Craig Cunningham
Plaintiff,                    10/9/2019

Craig Cunningham, Plaintiff, Pro-se 3000 Custer Road, ste 270-206, Plano, Tx 75075